IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY D/B/A NORTHWESTERN MUTUAL<br><br>and<br><br>ERIC MABRY,<br><br>Defendants. | Case No. 2:21-cv-00036 |

CLASS ACTION COMPLAINT

Preliminary Statement

1. Plaintiff Kenneth Johansen ("Plaintiff" or "Mr. Johansen") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Northwestern Mutual Life Insurance Company d/b/a Northwestern Mutual ("Northwestern Mutual") offers its services through captive insurance agents, such as Eric Mabry ("Mabry"), who engage in telemarketing to originate new potential clients for their financial consulting services. However, Defendants did so by calling residential numbers listed on the National Do Not Call Registry, like Mr. Johansen's, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4. A class action is the best means of obtaining redress for wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Kenneth Johansen is an Ohio resident and a resident of this district.

6. Defendant Northwestern Mutual is a corporation with its corporate headquarters at 720 E. Wisconsin Avenue, Milwaukee, WI 53202.

7. Defendant Eric Mabry is a Tennessee resident.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Defendants regularly engage in business in this district, including making telemarketing calls into this district.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the telemarketing calls to the Plaintiff occurred in this district.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

12. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Defendants' Illegal Telemarketing**

15. Defendant Northwestern Mutual is a financial service company that targets, among other things, residential customers.

16. Defendants use telemarketing to promote their products.

17. Recipients of these calls, including Plaintiff, did not consent to receive them and are often on the National Do Not Call Registry.

### The Calls to Mr. Johansen

18. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

19. Plaintiff has a residential telephone number of (614) XXX-1037.

20. The number is not associated with any business.

21. Northwestern Mutual placed at least two telemarketing calls to Mr. Johansen on June 30 and July 1, 2020.

22. When Mr. Johansen spoke with an individual, Mr. Landen Pilcher solicited him for investment services.

23. Mr. Pilcher informed Mr. Johansen he was a partner with Northwestern Mutual calling to set a personalized appointment with his "boss," Eric Mabry.

24. Mr. Pilcher explained that while Mr. Pilcher's "team's" main headquarters is in Memphis, Tennessee (which is where Mabry works), his team targeted professionals in the Cincinnati, Ohio area and also had a small office in Cincinnati.

25. Mr. Johansen asked Mr. Pilcher where he obtained his number.

26. Mr. Pilcher stated that his team did extensive business around Cincinnati, Ohio, so Mr. Johansen was probably referred by a friend.

27. While Mr. Johansen doubts that, in any event, that is not a sufficient basis to make a telemarketing call to someone who is on the National Do Not Call Registry.

28. Mr. Pilcher provided a callback number of (513) 547-2504 and told Mr. Johansen that his boss would send him an email from eric.mabry@nm.com, as in Northwestern Mutual.

29. Mr. Johansen asked Mr. Pilcher if he was familiar with the TCPA's restrictions.

30. Mr. Pilcher stated that he was not.

31. Mr. Johansen contacted Northwestern Mutual on July 2 and July 15, 2020 to ascertain if it had any permission to contact him with telemarketing calls.

32. None was provided.

33. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## Northwestern Mutual's Liability

34. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

35. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

36. In that ruling, the FCC instructed that sellers such as Northwestern Mutual may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the

> telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*Id*. at 6588, ¶ 37 (internal citations omitted).

37. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586, ¶ 34.

38. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id*. at 6592, ¶ 46.

6

39. By permitting its agents to engage in telemarketing, Northwestern Mutual "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

40. Northwestern Mutual trained its agents and encouraged them to engage in telemarketing. Northwestern Mutual directs its agents as to what sales tactics to use as well as what financial planning processes, procedures, and methodologies to use.

41. Mabry is a captive agent of Northwestern Mutual.

42. Northwestern Mutual only allows Mabry to sell Northwestern Mutual products and services.

43. Northwestern Mutual gave Mabry the authority to bind it in contract.

44. On Mabry's website, ericmabry.nm.com, a page on Northwestern Mutual's website, Defendants represent Mabry's team as being part of Northwestern Mutual. For example, the website explains Mabry's and his team's backgrounds and when they each "joined Northwestern Mutual." Defendants' website also holds out Northwestern Mutual's and Mabry's processes, strategies, services, and resources as being one and the same.

45. At all times, Northwestern Mutual maintained interim control over its agents.

46. For example, Northwestern Mutual had absolute control over whether, and under what circumstances, it would accept a customer from an agent and the various methods by which its agents could advertise to obtain clients for Northwestern Mutual.

47. Northwestern Mutual periodically reviewed and monitored its agents' performance.

48. Additionally, Northwestern Mutual had the ability and the authority to restrict the geographic regions in which its agents could market for Northwestern Mutual.

49. Northwestern Mutual also had the ability to audit and investigate to ensure that its agents' marketing of Northwestern Mutual products and services was compliant with the law.

50. Mabry and his customers transferred their customer information directly to Northwestern Mutual. Thus, Mabry had the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. 28 FCC Rcd. at 6592, ¶ 46. Mabry's website, ericmabry.nm.com, features a portal where clients can log into their Northwestern Mutual accounts. As such, Mabry was acting as an apparent agent of Northwestern Mutual.

51. Northwestern Mutual allowed its agents to hold themselves out to the public as if they were agents of Northwestern Mutual.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." 28 FCC Rcd. at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## Class Action Statement

53. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

54. The class of persons Plaintiff proposes to represent is tentatively defined as:

> **National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants (3) within a

8

>12-month period, (4) from four years prior the filing of the Complaint.

This is referred to as the "Class."

55. Excluded from the Class are counsel, the Defendants and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The Class as defined above is identifiable through phone records and phone number databases.

57. The potential members of the Class number at least in the thousands.

58. Individual joinder of these persons is impracticable.

59. The Plaintiff is a member of the Class.

60. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

>(a) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;
>
>(b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;
>
>(c) whether Defendants' conduct constitutes a violation of the TCPA;
>
>(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and
>
>(e) whether Northwestern Mutual is vicariously liable for Mabry's conduct.

61. Plaintiff's claims are typical of the claims of members of the Class.

62. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the

9

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

63. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

64. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

65. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

67. The Defendants' violations were negligent, willful, or knowing.

68. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to any residential telephone number on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representatives of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to residential telephone numbers on the National Do Not Call Registry, except for emergency purposes, in the future;

F. An award to Plaintiff and the Class of damages, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: January 6, 2021

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (*pro hac vice* to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com