**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

KENNETH JOHANSEN, individually and on
behalf of a class of all persons and entities
similarly situated,

          Plaintiff,

vs.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY D/B/A
NORTHWESTERN MUTUAL, et al.,

          Defendants.

Case No. 2:21-cv-00036

Judge Morrison
Magistrate Judge Vascura

**PLAINTIFF'S OPPOSITION TO THE NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY D/B/A NORTHWESTERN MUTUAL'S MOTION TO DISMISS**

**INTRODUCTION**

Northwestern Mutual spends most of its energy refuting legal theories not advanced in the

First Amended Complaint.  It is more illuminating to consider what Northwestern Mutual does not

attempt to refute.  Northwestern Mutual does not argue that the allegation that Eric Mabry was its

agent is not well pled.  Nor does Northwestern Mutual argue that the allegation that Landon Pilcher

was Eric Mabry's agent is not well pled.  In essence, then, Northwestern Mutual is moving for

dismissal on the basis of its argument that the First Amended Complaint does not plead that Eric

Mabry was acting within his authority when he hired individuals to telemarket on his and

Northwestern Mutual's behalf.  To make this argument, Northwestern Mutual advances a strained

reading of the allegations in the First Amended Complaint and inappropriately urges the Court to

draw inferences from Plaintiff's allegations in Northwestern Mutual's favor.  Plaintiff made

numerous allegations from which, if they don't compel the conclusion outright, it can at least be

reasonably inferred that Northwestern Mutual authorized Mabry to hire telemarketers, including

Mr. Pilcher.  Plaintiff also adequately pled that manifestations by and traceable to Northwestern

Mutual would cause a reasonable person to believe that Mr. Pilcher was acting on Mabry and

Northwestern Mutual's behalf.  This belief is not merely based on Mr. Pilcher's statements as

Northwestern Mutual argues.  Accordingly, Northwestern Mutual's Motion to Dismiss should be

denied.[1]

**LEGAL STANDARD**

On a motion to dismiss under Rule 12(b)(6), a court determines whether a plaintiff is

entitled to offer evidence in support of his claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

563 n.8 (2007) (citation omitted).  To survive such a motion, a plaintiff must merely plead

enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 663 (2009).  A motion to dismiss must be denied unless there is no "reasonable expectation

---

[1] Lacking a sufficient legal basis to dismiss this case, Northwestern Mutual attempts to cast doubt on Mr.
Johansen's claims (even though the Court is required to accept them as true) by arguing that he frequently
files TCPA claims and that "many" of his claims have been dismissed.  However, Northwestern Mutual
can only cite to two, which hardly qualifies as "many."  In *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp.
3d 577 (S.D. Ohio 2016), while Mr. Johansen's claim against one of the defendants, which was solely
based on a ratification theory (not advanced here) was dismissed, Judge Marbley certified a class against
the other defendant with Mr. Johansen as the class representative, and the parties later reached a class
settlement establishing an over $750,000 common fund to compensate the victims of the unlawful
telemarketing.  In *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785
(S.D. Ohio Aug. 16, 2018), Judge Graham *sua sponte* granted summary judgment to the defendant on the
basis of a novel legal interpretation of the Federal Communications Commission's ("FCC's") rules that if
one telemarketing vendor makes a call on behalf of a seller and establishes an established business
relationship ("EBR") with the consumer, an unrelated telemarketing vendor with no knowledge of that
EBR and in fact calling in an attempt to *create* an EBR still "relies" on the seller's EBR in those
circumstances as a matter of law (the Court presupposed that Mr. Johansen had adequately pled agency
liability).  This decision was appealed to the Sixth Circuit, and the case subsequently settled.  Nothing
about the fact that Mr. Johansen's success rate is slightly less than 100% renders his claims here dubious.
To the contrary, Mr. Johansen is knowledgeable about and experienced with the TCPA, which, if
anything, should bolster his claims.  Indeed, his claims are well supported by the type of "detective work"
that Northwestern Mutual argues plaintiffs who receive unlawful telemarketing calls *should do*.  (*See*
Doc. 28 p. 7.)

that discovery will reveal evidence" that would enable the trier of fact to decide in favor of the plaintiff. *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## LAW AND ARGUMENT

Ever since the TCPA was enacted, the FCC has repeatedly warned that the TCPA's broad restrictions on various forms of "telephone solicitations" cannot be evaded simply by utilizing third parties to physically transmit illegal calls. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Rcd. 12391, ¶ 13 (1995).

In 2013, the FCC ruled that sellers could be vicariously liable for the unlawful calls of third-party telemarketers based on "federal common law principles of agency," including theories of formal agency, apparent authority, and ratification. *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582-84 (2013) ("2013 FCC Order"). "The FCC has interpretive authority over the [TCPA]." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466-467 (6th Cir. 2010). *See also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371-372 (6th Cir. 2015) (adopting 2013 FCC Order).

In its 2013 Order, the FCC explained that vicarious liability was critical to realizing the TCPA's consumer protection goals:

> [A]s the telemarketing industry acknowledges – the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. … [C]onsistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.

2013 FCC Order, 28 FCC Rcd. at 6588. And, as described above, the FCC envisioned the scenario here where a defendant takes a strained reading of the plaintiff's complaint and asserts that the matter should be dismissed because the inner workings of the relationship between the defendant

3

and the third party it used to physically place the calls has not been pled.  As this Court has

previously recognized:

> The FCC has recognized that it is the defendant, not the plaintiff, who can reasonably be expected to know who placed the call, the relationship between the defendant and any third party, and any other related facts.  *See In the Matter of Dish Network*, 28 FCC Rcd. 6574, 6592-93 (2013) (explaining that consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information and that a consumer is not required to provide proof at the time it files its complaint that the seller should be held vicariously liable for the offending call).

*Charvat v. LE Energy, LLC*, No. 2:19-cv-1325, 2019 U.S. Dist. LEXIS 139601, at *7-8 (S.D. Ohio

Aug. 19, 2019) (Morrison, J.).  *See also Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-1151

(N.D. Ill. 2014) ("Defendants insist, however, that plaintiff has not pled any basis from which to

infer vicarious liability because he 'does not identify the third-party telemarketer or lead generator'

who initiated the call, nor does he allege 'what arrangement, if any, that third party had with either

defendant.'  These objections are meritless because it is defendants, not plaintiff, who can

reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to

entitle him to discovery on the issue of vicarious liability.") (citing 2013 FCC Order).

### *Classical Agency*

"In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine

whether vicarious liability should be imposed." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d

at 586.  According to the Restatement, "[a]gency is the fiduciary relationship that arises when one

person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the

principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

consents to act."  Restatement (Third) of Agency § 1.01.  The essential element of an agency

relationship is the principal's "right to control" the actor.  *Id.* at § 1.01 cmt. f.  A person may be an

agent "although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." *Id.* at § 1.01 cmt. c.  "A principal's failure to exercise the right to control does not eliminate it, nor is it eliminated by physical distance between the agent and the principal." *Id.*

Here, Northwestern Mutual concedes classical agency relationships have been pled between Northwestern Mutual and Mabry and between Mabry and Pilcher.  It argues that Northwestern Mutual did not hire Pilcher directly, but that is beside the point because that is not pled, nor was it required to be pled.

Northwestern Mutual then reads the First Amended Complaint unreasonably in an attempt to argue that Mabry was acting outside of the scope of his authority when he hired a telemarketer. The First Amended Complaint reads: "Mabry is a captive agent of Northwestern Mutual. Northwestern Mutual only allows Mabry to sell Northwestern Mutual products and services." (*See* Doc. 21 ¶¶ 43-44.)  Clearly these allegations are asserting that Mabry is only allowed to sell Northwestern Mutual's products and services and not the products and services of its competitors. But Northwestern Mutual urges the Court to adopt an awkward reading of the second sentence and to read it as an admission that Northwestern Mutual mandated that *only Mabry* could be involved in marketing Northwestern Mutual's products and services, and no one else.  The Court should not be reading the Complaint in the most awkward way possible in an attempt to draw inferences in Northwestern Mutual's favor.  It should be looking at the factual allegations that have been pled and drawing reasonable inferences in Plaintiff's favor.

There are numerous factual allegations in the First Amended Complaint that directly contradict the idea that Northwestern Mutual didn't authorize Mabry to hire telemarketers.  Among other things, the First Amended Complaint alleges:

- "Northwestern Mutual **trained its agents and encouraged them to engage in telemarketing**. Northwestern Mutual directs its agents as to what sales tactics to use as well as what financial planning processes, procedures, and methodologies to use." (Doc. 21 ¶ 42 (emphasis added).)

- "Mr. Mabry also **informed Northwestern Mutual of his team and that it included individuals soliciting on his behalf**." (*Id.* at ¶ 61 (emphasis added).)

- "Northwestern Mutual periodically reviewed and monitored its agents' performance." (*Id.* at ¶ 49.)

As such, the Court can reasonably infer from the First Amended Complaint that Mabry wasn't acting outside of the scope of his agency when he hired a telemarketer.

### *Apparent Authority*

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 cmt. c. As the FCC has explained, "[a]pparent authority can arise in multiple ways, and does not require that a principal's manifestation must be directed to a specific third party in a communication made directly to that person." 2013 FCC Order, 28 FCC Rcd. at 6586 & n.102 (citing Restatement (Third) of Agency § 2.03 cmt. c). "A principal may [ ] create apparent authority by actually or apparently authorizing an agent to make representations to third parties concerning the agent's own authority or position, even though the agent's representations by themselves would be insufficient. The determinative question is whether a third party can establish a linkage between statements of authority by the agent and a manifestation of assent by the principal to the making of such statements." Restatement (Third) of Agency § 3.03. A

6

principal's *inaction* can also create apparent authority "when it provides a basis for a third party

reasonably to believe the principal intentionally acquiesces in the agent's representations or

actions." *Id.*

There is no requirement that the third party must detrimentally rely on the apparent

authority, particularly not in TCPA cases, where any such requirement would be nonsensical.  *See*

*Lushe v. Verengo Inc.*, No. CV 13-07632 AB (RZ), 2015 U.S. Dist. LEXIS 16961, at *8-18 (C.D.

Cal. Feb. 2, 2015).  The third party's belief must simply be reasonable and traceable to

manifestations by the principal.  *Id.*

Here, Northwestern Mutual concedes that Plaintiff has pled that Mabry had apparent

authority to act on Northwestern Mutual's behalf.  Northwestern Mutual argues, however, that

there is somehow a missing link in the chain from Pilcher to Northwestern Mutual such that a

belief that Pilcher was acting on behalf of Mabry and Northwestern Mutual cannot reasonably be

traced back to Northwestern Mutual.  But, there are numerous allegations of manifestations by and

traceable to Northwestern Mutual that make such a belief reasonable.

As set forth above, Plaintiff alleged that Northwestern Mutual authorized Mabry to hire

telemarketers to solicit on his behalf, which is a manifestation by Northwestern Mutual.

Northwestern Mutual further gave Mabry the authority to bind it in contract, allowed Mabry to use

its trade name, and represents on its website that Mabry's team is a part of Northwestern Mutual.

(*See* Doc. 21 ¶¶ 45-46.)

In addition, Mr. Pilcher stated multiple times he was a part of his "boss," Mabry's, "team"

and that he was a "partner" with Northwestern Mutual.  (*Id.* at ¶¶ 3, 25, 26, 28.)  Northwestern

Mutual argues that Plaintiff cannot rely on Pilcher's statements alone to establish apparent

authority on behalf of Northwestern because there is a possibility he could have been an imposter

7

who for some reason was pretending to be authorized by Mabry and Northwestern Mutual. However, Plaintiff is not attempting to rely on Pilcher's statements alone.

Pilcher's statements are corroborated by Northwestern Mutual and Mabry's website, which in its entirety is a manifestation by Northwestern Mutual and Mabry. (*Id.* at ¶ 46.)  The website confirms Mabry has a "team" of other individuals that assist him. (*Id.*)  Northwestern Mutual urges the Court to draw inferences in its favor that the fact that Mr. Pilcher is not listed on the website means he must not have been part of the "team" and therefore must have been an unauthorized imposter.  However, nowhere does the website state or imply that all members of Mabry's team are listed.  Moreover, it would not be expected for a financial professional such as Mabry to list their telemarketers on their website.  As Congress recognized in passing the TCPA, telemarketing, particularly the type of "cold calling" to numbers on the National Do Not Call Registry alleged here, is a source of widespread outrage amongst American consumers.  *See, e.g., Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

The website also corroborates Mr. Pilcher's statements that the team's headquarters were in Tennessee but he was targeting consumers in the Cincinnati, Ohio area.  The website confirms Mabry is based in Tennessee but may be licensed in other states, which, per the "FINRA Brokercheck" the website directs the consumer to, include Ohio. (*See* Doc. 28-1 p. 5; https://brokercheck.finra.org/individual/summary/6577532.)  Mabry's and Pilcher's geographic constraints can also be traced back to manifestations by Northwestern Mutual for the separate reason that it was Northwestern Mutual that imposed those constraints in the first place. (*See* Doc. 21 ¶ 59.)

Additional proof a reasonable consumer's belief that Pilcher was authorized to act on Northwestern Mutual's behalf can be traced to Northwestern Mutual comes from the fact that

Pilcher knew that Mabry's Northwestern Mutual e-mail address (another manifestation by Northwestern Mutual) was eric.mabry@nm.com, which is not even publicly advertised on Northwestern Mutual/Mabry's website.  (*Id.* at ¶ 30.)  Plaintiff has shown more than sufficient linkage between Pilcher's statements and Northwestern Mutual's conduct to state a claim under an apparent authority theory.

## CONCLUSION

For the foregoing reasons, Northwestern Mutual's Motion to Dismiss should be DENIED.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2021, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.


/s/ **Brian K. Murphy**
Brian K. Murphy (0070654)