**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, ERIC MABRY, and LANDON PILCHER,<br><br>    Defendants. | Case No. 2:21-cv-00036<br><br>Judge Sarah D. Morrison<br><br>Magistrate Judge Chelsey M. Vascura |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

**I. INTRODUCTION**

Plaintiff Ken Johansen ("Plaintiff") and Defendants The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), Eric Mabry ("Mabry"), and Landon Pilcher ("Pilcher," and, together with Northwestern Mutual and Mabry, "Defendants") (Plaintiff and Defendants are collectively referred to as the "Parties") have reached a class action settlement of this matter.[1] The Settlement includes the establishment of a $600,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members whose telephone numbers are on the Class List, and who do not submit a request for exclusion, after payment of notice and administration costs (if approved), Plaintiff's counsel fees and costs (if approved), and a Service Payment to the Plaintiff (if approved).[2] There is no reverter in the Settlement Fund. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained by

---

[1] Defendants do not oppose this Motion insofar as it supports the proposed settlement. Defendants do not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit A.

- 1 -

Plaintiff in discovery and a website containing the Class Notice. Notably, the Settlement does not even require Settlement Class Members to make a claim. If they don't file an exclusion, they will receive a settlement payment, which is estimated to be more than $350.

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator appointed by the Court and exchanged detailed mediation statements. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan and Notice; and (6) schedule the Final Approval Hearing and related dates as proposed. A proposed Preliminary Approval Order is attached as Exhibit B and has been lodged with the Court.

**II.      NATURE AND BACKGROUND OF THE CASE**

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a residential telephone number listed on the Do Not Call Registry. *See* 47 U.S.C. § 227(c). Plaintiff is an individual residing in Ohio whose telephone number was listed on the Registry and called twice by Defendant Pilcher on behalf of Defendant Mabry. Mabry is an independent insurance agent authorized by contract to sell Northwestern Mutual products along with other insurance companies' products. Pilcher, on the other hand, entered an exclusive arrangement with Mabry to contact persons via telephone and schedule meetings with Mabry for prospective business. On January 6, 2021, Plaintiff filed a putative class action

complaint against Northwestern Mutual and Mabry in the United States District Court for the Southern District of Ohio, captioned *Ken Johansen v. The Northwestern Mutual Life Insurance Company*, No. 2:21-cv-00036 (the "Action").  Plaintiff filed a First Amended Class Action Complaint on April 20, 2021 that added Pilcher as a defendant and alleged, among other things, that Defendants violated the TCPA by, *inter alia*, placing unsolicited telemarketing calls to Plaintiff and members of the putative class who listed their residential telephone line on the National Do Not Call Registry.  After engaging in discovery, the Parties participated in a mediation on September 8, 2022, with Richard Coglianese, Esq., who was appointed by the Court to mediate, during which the Parties discussed the potential settlement of the Action.  On or about September 8, 2022, the Parties tentatively agreed to a potential settlement of the Action, the key terms of which are memorialized in the Agreement attached as Exhibit A.

### III. THE PROPOSED SETTLEMENT

#### A. THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only, defined as:

> All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Eric Mabry, (3) within a 12-month period, (4) from four years prior to January 6, 2021.

(Agreement ¶ 1.24.)

#### B. SETTLEMENT RELIEF

##### 1. Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $600,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of

the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $20,000; and (5) a court-approved Service Payment to the Class Representative of up to $10,000.

Each Settlement Class Member whose telephone number is on the Class List, and who does not submit a request for exclusion, shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Service Payment, and Fees, Costs, and Expenses Awards are paid out of the Settlement Fund. (*Id.* ¶ 3.2.1.) If all the Fees, Costs and Expenses Awards, Service Payment, and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $375.00. The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible. (*Id.* ¶ 3.6.)

### 2. Class Representative Service Payment

If approved by the Court, the Plaintiff will receive a Service Payment of $10,000 from the Settlement Fund. This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

### 3. Attorneys' Fees and Costs

If the Settlement receives preliminary approval, Plaintiff's counsel will apply to the Court for a Fees, Costs, and Expenses Award in the amount of up to one-third of the total amount of the Settlement Fund in addition to out-of-pocket expenses. As Plaintiff's counsel will address in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the Action. Plaintiff's

proposed attorney fee award (and costs) is plainly disclosed to the Settlement Class in the proposed notice and is wholly consistent with other cases.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Authorized Claimant Awards, Settlement Administration Expenses, and any Fees, Costs, and Expenses Award and Service Payment will be distributed to a Court-approved *cy pres* recipient.[3] This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

### C. NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund. The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm AB Data, Ltd. to be the Settlement Administrator (Agreement ¶ 1.23), to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. The Settlement Administrator's duties will include: (1) sending the Class Notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating requests for exclusion and objections; and (4) issuing Authorized Claimants' Individual Allocated Payment Amounts.

The Settlement Administrator will send Postcard Notice via the U.S. Postal Service—substantially in the form attached as Exhibit 3 to the Settlement Agreement—to the names and addresses of Settlement Class Members identified as being the owners or users of the phone numbers contained on the Class List. (*Id.* ¶ 4.4.2.) The Settlement Administrator will administer

---

[3] The Plaintiff proposes the National Consumer Law Center as an appropriate *cy pres* recipient.

- 5 -

a Settlement Website, through which Settlement Class Members will be able to obtain further details and information about the Settlement.  (*Id.* ¶ 4.3.)

### D. OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval.  (*Id.* ¶ 5.2.)  The procedures and deadlines for filing requests for exclusion and objections will be conspicuously listed in the Class Notice and on the Settlement Website.  (*See id.* at Exs. 2-4.)  The Class Notice informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing.  (*Id.*)  The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right.  (*Id.*)

### E. RELEASE

The release is appropriately tailored to this case involving alleged violations similar to those alleged and is limited to those Settlement Class Members identified in the Class List.  In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendants from any and all claims against the Released Parties, arising out of Defendants' telemarketing records obtained by Plaintiff through discovery.  (*Id.* ¶ 1.2, 1.3, 1.21, 1.26.)

### IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation.  *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of

immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement of a certified class action. The procedure for approving a class action settlement includes three steps: (1) the court preliminarily approves the settlement; (2) the members of the class then are given notice of the settlement; and (3) the court then holds a hearing to determine whether the settlement is fair, reasonable, and adequate. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Williams v. Vukovich*, 720 F.2d 909, 921-22 (6th Cir. 1983). With the amendment of Rule 23, the Court is additionally required to specifically consider whether the Representative Plaintiff and Class Counsel have adequately represented the Settlement Class in the proceeding to date; whether the proposed Settlement was negotiated at arm's length; whether the proposed relief available to the Settlement Class appears to be adequate, taking into account the costs, risks, and delay of trial and appeal; the anticipated effectiveness of the proposed method for distributing the proposed relief available to the Settlement Class, including the proposed method of processing class-member claims; whether the terms of any proposed award of attorney's fees, including timing of payment, are reasonable; and whether the proposed Settlement treats members of the Settlement Class equitably relative to each other. As is set forth below, Plaintiff submits that all of the requirements of Amended Rule 23 are readily met here.

At this juncture, the parties request that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class. The final determination of whether the proposed Settlement is fair, reasonable, and adequate is made only after notice of the Settlement

has been given to the members of the Class and after they have been given an opportunity to voice their views regarding the Settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

A. **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement: (1) is within the range of what might be found fair, reasonable, and adequate, and (2) does not disclose grounds to doubt its fairness or other obvious deficiencies, such that notice of the proposed Settlement should be given to Class Members and a hearing scheduled to consider final settlement approval. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001); *see also Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

"'Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive.'" *Miracle v. Bullitt County*, No. 05-130-C, 2008 U.S. Dist. LEXIS 62603, at *14 (W.D. Ky. Aug. 14, 2008) (citations omitted). Here, the Settlement was reached after hard-fought litigation and arduous settlement negotiations with the substantial assistance of Richard Coglianese, Esq. The Settlement provides an immediate and substantial benefit of $600,000 in cash for the benefit of the Class which will result in an anticipated per class member payout of $375.00. Given the complexities of this litigation and the substantial risks of continued litigation, the Settlement represents a very good resolution of this Action and eliminates the risk that the Class might not recover anything if the litigation were to continue. There is no question that the Settlement is

within the range of what has been found fair, reasonable, and adequate, such that notice of the proposed Settlement should be given to Class Members and a hearing scheduled to consider final settlement approval.

> **B. FACTORS CONSIDERED IN CONNECTION WITH FINAL APPROVAL OF CLASS ACTION SETTLEMENTS SUPPORT GRANTING PRELIMINARY APPROVAL**

Moreover, reference to certain of the factors considered by courts in connection with final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval. In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest. *Williams*, 720 F.2d at 921; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001). Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, 'the relevancy of which will vary from case to case.'") (citation omitted). Here, any objections raised by class members will be after notice is sent and a settlement will be in the public's interest. *See Telectronics*, 137 F. Supp. 2d at 1027 ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."). This is especially true in complex class actions such as this. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). These

factors largely overlap with the additional requirements imposed by Amended Rule 23. The factors are evaluated below.

### 1. Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

The initial factor that courts consider in reviewing a class action settlement is the likelihood of success on the merits balanced against the amount and form of relief offered in settlement. *See Williams*, 720 F.2d at 922. While Plaintiff's counsel believes that the claims asserted in the litigation have merit, they recognize and acknowledge the expense, length, and uncertainty of continued proceedings necessary to prosecute the litigation against Defendants through summary judgment, trial, and appeals. Specifically, in this case, the Defendants were expected to challenge the ascertainability of the class and to argue that determining which outbound calls were related to telemarketing and which were not would create predominance concerns that would require de-certification. Plaintiff's counsel also has taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. In addition, Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to, the violations asserted in the litigation. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (exploring "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provides justifications for th[e] Court's approval of the proposed Settlement").

### 2. The Complexity, Expense, and Likely Duration of the Litigation.

This litigation has been pending now for nearly two years. Over the course of those years, Plaintiff's counsel took extensive discovery. This is not a case where a settlement was reached quickly and without fulsome investigation. The ultimate outcome of this matter at trial

and then on appeal, however, was uncertain. The Class faced a considerable risk of obtaining no settlement. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### 3. The Risk of Fraud or Collusion and the Nature of Negotiations.

The terms of the proposed Settlement are the product of extensive arm's-length negotiations between the parties, with the substantial assistance of an experienced mediator appointed by the Court. During these negotiations, Plaintiff's counsel zealously advanced their position and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Settlement Class. Defendants were also represented by highly capable and experienced lawyers. Counsel for the Defendants zealously represented Defendants during the settlement negotiations and throughout the litigation. The Settlement was reached only after extensive arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses. Indeed, Plaintiff's counsel carefully considered and evaluated a number of factors, including the relevant legal authorities and evidence pertaining to the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and any appeals and subsequent proceedings. After considering these factors, Plaintiff's counsel reasonably concluded that the Settlement is not only fair, reasonable, and adequate but is a very good result for the Settlement Class.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed

Additionally, the stage of the proceedings supports approval of the Settlement. *Telectronics*, 137 F. Supp. 2d at 1015. By the time the Settlement was reached, Plaintiff's counsel had sufficient knowledge and a significant understanding of the merits of the claims alleged in the litigation and the defenses that would be asserted by Defendants to intelligently determine that the Settlement is in the best interest of the Settlement Class. Here, fact discovery was nearly complete. The Plaintiff had retained an expert who analyzed the calling records. Plaintiff and his counsel's vigorous representation of the putative class readily satisfies the requirement of Amended Rule 23(e) of adequate representation of the proposed Settlement Class.

In addition, the Parties participated in an arm's-length mediation with Attorney Coglianese where the strengths and weaknesses of the claims asserted were fully vetted. Prior to the mediation, the parties exchanged detailed mediation statements that further highlighted the factual and legal issues in dispute. The "arm's-length" negotiation requirement of Amended Rule 23(e) is also satisfied.

### 5. The Judgment of Experienced Trial Counsel.

Plaintiff's counsel has significant experience and expertise in TCPA and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, and they support the Settlement. *See* Declarations of Brian Murphy and Anthony Paronich, attached hereto as Exhibits C and D, respectively. The Sixth Circuit has determined that a court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel."); *Thacker v. Chesapeake Appalachia,*

*L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Based on their thorough evaluation, Plaintiff's counsel believes the benefits of the Settlement merit approval, particularly when weighed against the expense, risks, and uncertainty of continued litigation. While there is always a chance of a greater recovery down the road, such a result is by no means guaranteed, and any such expectation must be tempered by a recognition that any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977), "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained ….'" *Id.* at 1330 (citation omitted).

In light of the risks of continued litigation laid out above, and the determination of experienced counsel that the Settlement represents an excellent result for the class, Plaintiff's counsel respectfully submit that the proposed Settlement meets the requirement of Amended Rule 23(e) that the proposed relief be found adequate, taking into account the costs, risks, and delay of trial and appeal.

## V.   THE PROPOSED NOTICE AND FUND DISTRIBUTION PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the

approval of the court and that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the Rule provides, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Here, the Parties have negotiated the content of the Notice of Class Action and Proposed Settlement (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed Class Notice, attached as Exhibits 2 and 3 to the Settlement Agreement, satisfy all of the above criteria. The Notice describes the nature of the litigation; sets forth the definition of

the Class; states the Class claims; and discloses the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so, and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves. In addition, the Notice describes the Settlement; sets forth the Settlement Fund; explains the distribution and claims process; states the parties' disagreement over damages and other issues; and sets out the amount of attorneys' fees and expenses that Plaintiff's counsel intends to seek in connection with final settlement approval. The Notice also provides contact information for Plaintiff's counsel and the Settlement Administrator and summarizes the reasons the Parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement and appearing at the hearing. The contents of the Notice therefore satisfy all applicable requirements. In addition, the Settlement Agreement calls for distribution of Authorized Claimant Awards within 45 calendar days after entry of the Final Approval Order.

All Settlement Class members whose telephone number is on the Class List and who does not submit a request for exclusion will be entitled to an equal payment made by a Settlement Administrator experienced and proficient in administering class settlements, thereby satisfying the twin requirements of Amended Rule 23(e) that the method for distribution of payments be effective, and that the proposed settlement treat settlement class members equitably relative to each other.

## VI. SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice and deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the Settlement. The Parties propose the following schedule:

| | |
|---|---|
| Last day for Plaintiff to provide the Settlement Administrator the Class List | On or before 14 days after entry of the Preliminary Approval Order |
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, email address, and P.O. Box to accept inquiries from Settlement Class Members | On or before 30 days after the entry of the Preliminary Approval Order |
| Settlement Administrator provides Postcard Notice to Settlement Class Members | On or before 30 days after the entry of the Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Fees, Costs, and Expenses Award and apply for Service Payment | On or before 49 days after entry of the Preliminary Approval Order |
| Last day for Settlement Class Members to object, or request exclusion from the Settlement Class | On or before 60 days after entry of the Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | On or before 14 days before Final Approval Hearing |
| Last day for Defendants to file optional brief in support of Settlement | On or before 7 days before Final Approval Hearing |

## VII. CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's preliminary approval, and Plaintiff's counsel respectfully requests that the motion be granted.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

I, hereby certify that on November 22, 2022, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy