IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, ERIC MABRY, and LANDON PILCHER,<br><br>Defendants. | Case No. 2:21-cv-00036<br><br>Judge Sarah D. Morrison<br><br>Magistrate Judge Chelsey M. Vascura |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

Plaintiff Ken Johansen ("Plaintiff"), along with Defendants The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), Eric Mabry ("Mabry"), and Landon Pilcher ("Pilcher," and, together with Northwestern Mutual and Mabry, "Defendants") (Plaintiff and Defendants are collectively referred to as the "Parties"), reached a class action settlement of this matter (the "Settlement") for which this Court granted preliminary approval on December 15, 2022.[1] (Doc. 73.) As instructed by the Court's Preliminary Approval Order, AB Data, Ltd. ("AB Data") as Settlement Administrator sent the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA") to the appropriate federal and state officials, created a case specific website, mailed the approved form of notice to potential members of the class, and processed claims. (*See* Declaration of John Quinn Re: Notice Procedures and Administration

---
[1] Defendants do not oppose this Motion insofar as it supports the proposed Settlement. Defendants do not concede or admit Plaintiff's assertions.

- 1 -

("AB Data Decl."), attached hereto as Exhibit 1, at ¶¶ 2, 5-7.) Class Counsel additionally filed Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award on February 2, 2023. (Doc. 76.) Notably, no objections were received to any aspect of the Settlement, including Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award, and no requests for exclusion were received. (AB Data Decl. at ¶¶ 9-10.)

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection act ("TCPA"), 47 U.S.C. § 227. The Parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator appointed by the Court, which included the exchange of detailed mediation statements. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant final approval of the Settlement; (2) certify the proposed Settlement Class; (3) award Class Counsel their attorneys' fees and expenses as requested in Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award; and (4) award the Class Representative $10,000 for his service to the Settlement Class. A proposed Final Approval Order is attached as Exhibit 2 and has been lodged with the Court.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a residential telephone number listed on the Do Not Call Registry. *See* 47 U.S.C. § 227(c). Plaintiff is an individual residing in Ohio whose telephone number was listed on the Registry and called twice by Defendant Pilcher on behalf of Defendant Mabry. Mabry is an independent insurance agent authorized by contract to sell Northwestern Mutual products along with other insurance companies' products. Pilcher, on the other hand, entered an

exclusive arrangement with Mabry to contact persons via telephone and schedule meetings with Mabry for prospective business. On January 6, 2021, Plaintiff filed a putative class action complaint against Northwestern Mutual and Mabry in the United States District Court for the Southern District of Ohio, captioned *Ken Johansen v. The Northwestern Mutual Life Insurance Company*, No. 2:21-cv-00036 (the "Action"). Plaintiff filed a First Amended Class Action Complaint on April 20, 2021 that added Pilcher as a defendant and alleged, among other things, that Defendants violated the TCPA by, *inter alia*, placing unsolicited telemarketing calls to Plaintiff and members of the putative class who listed their residential telephone line on the National Do Not Call Registry. After engaging in discovery, the Parties participated in a mediation on September 8, 2022, with Richard Coglianese, Esq., who was appointed by the Court to mediate, during which the Parties discussed the potential settlement of the Action. On or about September 8, 2022, the Parties tentatively agreed to a potential settlement of the Action, the key terms of which are memorialized in the Agreement attached as Exhibit A to the previously filed Motion for Preliminary Approval of Class Action Settlement (Doc. 72-1, the "Agreement").

## III. THE PROPOSED SETTLEMENT

### A. THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only, defined as:

> All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Eric Mabry, (3) within a 12-month period, (4) from four years prior to January 6, 2021.

(Agreement ¶ 1.24.)

B.     **SETTLEMENT RELIEF**

1.     **Class Member Relief: Settlement Fund**

The proposed Settlement establishes a non-reversionary $600,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $20,000; and (5) a Court-approved Service Payment to the Class Representative of up to $10,000.

Each Settlement Class Member whose telephone number is on the Class List, and who does not submit a request for exclusion, shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Service Payment, and Fees, Costs, and Expenses Awards are paid out of the Settlement Fund. (*Id.* ¶ 3.2.1.) If all the Fees, Costs and Expenses Awards, Service Payment, and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be not less than $599. The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible. (*Id.* ¶ 3.6.)

2.     **Class Representative Service Payment**

If approved by the Court, the Plaintiff will receive a Service Payment of $10,000 from the Settlement Fund. This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

### 3. Attorneys' Fees and Costs

If the Settlement receives final approval, Plaintiff's counsel will receive one-third of the total amount of the Settlement Fund ($200,000) in addition to out-of-pocket expenses of $8,961. As Plaintiff's counsel addressed in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's counsel for their efforts on behalf of the class. (Doc. 76.) Plaintiff's proposed attorney fee award and expenses were plainly disclosed to the Settlement Class in the Notice, and no objections were lodged. The proposed fee award is wholly consistent with other cases. (*Id.* at pp. 15-16.)

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Authorized Claimant Awards, Settlement Administration Expenses, and any Fees, Costs, and Expenses Award and Service Payment will be distributed to a Court-approved *cy pres* recipient.[2] This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

## C. NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund. (Agreement ¶ 2.1.4.) The Court has appointed the nationally-recognized class action administration firm AB Data to be the Settlement Administrator. (Doc. 73 at ¶ 9.) The Settlement Administrator's duties included: (1) sending the Class Notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating requests for exclusion and objections; and (4) issuing Authorized Claimants' Individual Allocated Payment Amounts. AB Data has completed its notice and claims administration obligations. (*See* AB Data Decl.)

---

[2] The Plaintiff has proposed the National Consumer Law Center as an appropriate *cy pres* recipient.

### D. OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class had the opportunity to exclude themselves from the Settlement or object to its approval. (Agreement at ¶ 5.2.) The procedures and deadlines for filing requests for exclusion and objections were conspicuously listed in the Class Notice and on the Settlement Website. (*See id.* at Exs. 2-4.) That no Settlement Class Members opted out of the Settlement and none objected weighs greatly in favor of approval.

### E. RELEASE

The release is appropriately tailored to this case involving alleged violations similar to those alleged and is limited to those Settlement Class Members identified in the Class List. In exchange for settlement benefits, all Settlement Class Members will release Defendants from any and all claims against the Released Parties, arising out of Defendants' telemarketing records obtained by Plaintiff through discovery. (Agreement at ¶ 1.2, 1.3, 1.21, 1.26.)

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes. This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation. *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement of a certified class action. The procedure for approving a class action settlement includes three steps:

(1) the court preliminarily approves the settlement; (2) the members of the class then are given notice of the settlement; and (3) the court then holds a hearing to determine whether the settlement is fair, reasonable, and adequate. *See Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Williams v. Vukovich*, 720 F.2d 909, 921-22 (6th Cir. 1983). With the amendment of Rule 23, the Court is additionally required to specifically consider whether the Representative Plaintiff and Class Counsel have adequately represented the Settlement Class in the proceeding to date; whether the proposed Settlement was negotiated at arm's length; whether the proposed relief available to the Settlement Class appears to be adequate, taking into account the costs, risks, and delay of trial and appeal; the anticipated effectiveness of the proposed method for distributing the proposed relief available to the Settlement Class, including the proposed method of processing class-member claims; whether the terms of any proposed award of attorney's fees, including timing of payment, are reasonable; and whether the proposed Settlement treats members of the Settlement Class equitably relative to each other. As is set forth below, Plaintiff submits that all of the requirements of Amended Rule 23 are readily met here.

The Parties request that the Court grant final approval of the Settlement. Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate, as is evidenced by the fact that not a single class member objected to the Settlement, and none requested to be excluded from the Settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

### A. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Settlement was reached after hard-fought litigation and arduous settlement negotiations with the substantial assistance of Richard Coglianese, Esq. The Settlement provides an immediate and substantial benefit of $600,000 in cash for the benefit of the Class which will

result in an anticipated per class member payout of not less than $599. Given the complexities of this litigation and the substantial risks of continued litigation, the Settlement represents a very good resolution of this Action and eliminates the risk that the class might not recover anything if the litigation were to continue. There is no question that the Settlement is within the range of what has been found fair, reasonable, and adequate.

### B. FACTORS CONSIDERED IN CONNECTION WITH APPROVAL OF CLASS ACTION SETTLEMENTS SUPPORT GRANTING FINAL APPROVAL

Moreover, reference to certain of the factors considered by courts in connection with final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval. In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest. *Williams*, 720 F.2d at 921; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001). Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, 'the relevancy of which will vary from case to case.'") (citation omitted). These factors largely overlap with the additional requirements imposed by Amended Rule 23. The factors are evaluated below.

1. **Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement**

The initial factor that courts consider in reviewing a class action settlement is the likelihood of success on the merits balanced against the amount and form of relief offered in settlement. *See Williams*, 720 F.2d at 922. While Plaintiff's counsel believes that the claims asserted in the litigation have merit, they recognize and acknowledge the expense, length, and uncertainty of continued proceedings necessary to prosecute the litigation against Defendants through summary judgment, trial, and appeals. Specifically, in this case, the Defendants were expected to challenge the ascertainability of the class and to argue that determining which outbound calls were related to telemarketing and which were not would create predominance concerns that would require de-certification. Plaintiff's counsel also has taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. In addition, Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to, the violations asserted in the litigation. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (exploring "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provides justifications for th[e] Court's approval of the proposed Settlement").

2. **The Complexity, Expense, and Likely Duration of the Litigation**

This litigation has been pending now for over two years. Over the course of those years, Plaintiff's counsel took extensive discovery. This is not a case where a settlement was reached quickly and without fulsome investigation. The ultimate outcome of this matter at trial and then on appeal, however, was uncertain. The class faced a considerable risk of obtaining no settlement. The Settlement avoids these risks and provides immediate and certain relief. *See,*

*e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### 3. The Risk of Fraud or Collusion and the Nature of Negotiations

The terms of the proposed Settlement are the product of extensive arm's-length negotiations between the Parties, with the substantial assistance of an experienced mediator appointed by the Court. During these negotiations, Plaintiff's counsel zealously advanced their position and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Settlement Class. Defendants were also represented by highly capable and experienced lawyers. Counsel for the Defendants zealously represented Defendants during the settlement negotiations and throughout the litigation. The Settlement was reached only after extensive arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses. Indeed, Plaintiff's counsel carefully considered and evaluated a number of factors, including the relevant legal authorities and evidence pertaining to the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and any appeals and subsequent proceedings. After considering these factors, Plaintiff's counsel reasonably concluded that the Settlement is not only fair, reasonable, and adequate but is a very good result for the Settlement Class.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed

Additionally, the stage of the proceedings supports approval of the Settlement. *Telectronics*, 137 F. Supp. 2d at 1015. By the time the Settlement was reached, Plaintiff's

counsel had sufficient knowledge and a significant understanding of the merits of the claims alleged in the litigation and the defenses that would be asserted by Defendants to intelligently determine that the Settlement is in the best interest of the Settlement Class. Here, fact discovery was nearly complete. The Plaintiff had retained an expert who analyzed the calling records. Plaintiff and his counsel's vigorous representation of the putative class readily satisfies the requirement of Amended Rule 23(e) of adequate representation of the proposed Settlement Class.

In addition, the Parties participated in an arm's-length mediation with Attorney Coglianese where the strengths and weaknesses of the claims asserted were fully vetted. Prior to the mediation, the Parties exchanged detailed mediation statements that further highlighted the factual and legal issues in dispute. The "arm's-length" negotiation requirement of Amended Rule 23(e) is also satisfied.

### 5. The Judgment of Experienced Trial Counsel

Plaintiff's counsel has significant experience and expertise in TCPA and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, and they support the Settlement. (*See* Docs. 72-3 and 72-4.) The Sixth Circuit has determined that a court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd*

*sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Based on their thorough evaluation, Plaintiff's counsel believes the benefits of the Settlement merit approval, particularly when weighed against the expense, risks, and uncertainty of continued litigation. While there is always a chance of a greater recovery down the road, such a result is by no means guaranteed, and any such expectation must be tempered by a recognition that any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977), "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained ….'" *Id.* at 1330 (citation omitted).

In light of the risks of continued litigation laid out above, and the determination of experienced counsel that the Settlement represents an excellent result for the class, Plaintiff's counsel respectfully submit that the proposed Settlement meets the requirement of Amended Rule 23(e) that the proposed relief be found adequate, taking into account the costs, risks, and delay of trial and appeal.

## V.     THE NOTICE AND FUND DISTRIBUTION PROGRAM WAS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the Court and that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs. Fed. R. Civ. P. 23(e). In addition,

the Rule provides, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Here, the Parties negotiated the content of the Notice of Class Action and Proposed Settlement (the "Notice") that was disseminated to all persons who fall within the definition of the class and whose names and addresses can be identified. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The Class Notice, attached as Exhibits 2 and 3 to the Agreement, satisfied all of the above criteria. The Notice described the nature of the litigation; set forth the definition of the class; stated the class claims; and disclosed the right of class members to exclude themselves from the class, as well as the deadline and procedure for doing so, and warned of the binding effect of the

settlement approval proceedings on class members who do not exclude themselves.  In addition, the Notice described the Settlement; set forth the Settlement Fund; explained the distribution and claims process; stated the Parties' disagreement over damages and other issues; and set out the amount of attorneys' fees and expenses that Plaintiff's counsel would seek in connection with final settlement approval.  The Notice also provided contact information for Plaintiff's counsel and the Settlement Administrator and summarized the reasons the Parties proposed the Settlement.  The Notice also disclosed the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement and appearing at the hearing.  The contents of the Notice therefore satisfied all applicable requirements.  In addition, the Agreement calls for distribution of Authorized Claimant Awards within 45 calendar days after entry of the Final Approval Order.

All Settlement Class Members whose telephone number is on the Class List and who did not submit a request for exclusion will be entitled to an equal payment made by a Settlement Administrator experienced and proficient in administering class settlements, thereby satisfying the twin requirements of Amended Rule 23(e) that the method for distribution of payments be effective, and that the proposed settlement treat Settlement Class Members equitably relative to each other.

## VI. CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's final approval, and Plaintiff's counsel respectfully requests that the motion be granted.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
      misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on March 29, 2023, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy